UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

HORACE DEWAYNE ALLEN,                              Civil No. 10-4205 (MJD/JSM)

        Plaintiff,

v.                                         REPORT AND RECOMMENDATION

BANK OF AMERICA CORPORATION,
BANK OF AMERICA, N.A.,
MERRILL LYNCH BANK USA,
PHH MORTGAGE CORPORATION, and
WELLS FARGO & COMPANY,

        Defendants.


        The above matter came on before the undersigned on Defendants' Motion to

Dismiss [Docket No. 3] and Plaintiff's Motion to Amend Complaint [Docket No. 53].  Plaintiff

Horace Allen appeared pro se;  D. Charles Macdonald, Esq. and Michelle E. Weinberg,

Esq. appeared on defendants' behalf at the hearing on defendants' motion to dismiss, held

on April 21, 2011.[1]  D. Charles Macdonald, Esq. appeared at the hearing on plaintiff's

motion for leave to amend his complaint, held on June 6, 2011.  This matter was referred to

the undersigned Magistrate Judge for a Report and Recommendation by the District Court

pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1.

I.      BACKGROUND

        Plaintiff Horace Allen sued the defendants in Scott County, Minnesota, alleging

harassment, discrimination and fraud in connection with defendant Merrill Lynch's

foreclosure of the mortgage encumbering his residence.  Amended Complaint [Docket

---

[1]     The Court ordered that defendants' Motion to Dismiss be held in abeyance until
plaintiff served and filed his motion for leave to amend his complaint and a hearing was
held on that motion.  Order, p. 1 [Docket No. 58].

No. 1-6].  Defendants removed the action to the United States District Court pursuant to 28 U.S.C. §1332, alleging diversity of citizenship and a dollar amount in controversy in excess of $75,000 [Docket No. 1].  In lieu of answering, defendants moved to dismiss the Amended Complaint [Docket No. 3].

Allen refinanced the mortgage on his residence in Prior Lake, Minnesota in January, 2002 in the principal amount of $600,000.  Amended Complaint, ¶31; Affidavit of D. Charles Macdonald in Support of Motion to Dismiss ("Macdonald Aff."), Ex. A (Adjustable Rate Note) [Docket No. 13-1].   The lender was Merrill Lynch Credit Corporation (predecessor to defendant Merrill Lynch Bank).  Amended Complaint, ¶31. According to the defendants, Bank of America Corporation is the parent of Merrill Lynch Bank ("MLB"), PHH Mortgage ("PHH") is the servicer of Allen's note and mortgage for MLB, and Wells Fargo & Company ("Wells Fargo") is the parent of Wells Fargo Bank, N.A., the bank at which PHH has its depository accounts.  Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem. to Dismiss"), p. 3 [Docket No. 12].

Merrill Lynch began foreclosure proceedings against the property in March, 2007. Amended Complaint, ¶29; Complaint, Ex. 110.[2]  On May 14, 2007, Allen wrote to Merrill Lynch's CEO Stanley O'Neal asking for a stay in the foreclosure proceedings. Amended Complaint, ¶66; Complaint, Ex. 112.   Merrill Lynch agreed to stay the foreclosure.   Later that same month, Allen sued his homebuilder, alleging property damage from water intrusion.  Amended Complaint, ¶38.  In August, 2007, Merrill Lynch agreed to a loan modification that required Allen to make interest only payments of $2945.47 per month beginning on January 1, 2008 and ending on March 1, 2012, at

_____

[2]     Plaintiff's Amended Complaint referred to exhibits attached to his original Complaint.

which time Allen was to begin paying principal and interest.  Amended Complaint, ¶43; Complaint, Ex. 123; MacDonald Aff., Ex. C (Loan Modification Agreement);

Allen made no payments under the loan modification agreement, and the Amended Complaint does not allege that he did make such payments.  Def. Mem., p. 5; Amended Complaint.  Allen sought another loan modification by writing to the Chairman and CEO of Merrill Lynch asking that the loan modification be renewed until August 1, 2008.  Amended Complaint, ¶74; Complaint, Ex. 129.  On April 17, 2008, Allen was informed that Merrill Lynch intended to reinitiate foreclosure proceedings.  Amended Complaint, ¶73; Complaint, Ex. 136.  On June 4, 2008, PHH agreed to stay the pending foreclosure for four weeks to permit inspection of the property.  Amended Complaint, ¶75; Complaint, Ex. 142.

On July 1, 2008, Allen sought a "short sale" of his property, suggesting that Merrill Lynch sell him the property for $1.  Complaint, Ex. 148.  On August 25, 2008, Merrill Lynch intervened in Allen's lawsuit against his homebuilder to protect its interests as mortgagee.  Amended Complaint, ¶29; Complaint, Ex. 159.  On October 13, 2008, attorney D. Charles Macdonald informed Allen that Merrill Lynch was willing to reinstate the loan modification by "commencing monthly payments immediately at 1 1/2 times the originally agreed upon figure until such time as [Allen] was caught up on the payments [he] missed since the Modification Agreement was signed.  Once the past due payments have been paid, the required monthly payment will revert back to the originally agreed upon figure [$2945.47]."  Complaint, Ex. 165.  Macdonald also informed Allen that if he was "unwilling or unable to make such payments, [Allen] would

leave Merrill Lynch little choice but to pursue its remedies under the Mortgage and the promissory note secured thereby." Id.

Allen settled his claims against the homebuilder and $300,000 of the settlement funds were placed into an escrow account dedicated to funding repairs to the residence. Amended Complaint, ¶32; Macdonald Aff., Ex. F (agreement between Allen and MLB regarding escrow of $300,000) (the "escrow agreement"). Pursuant to paragraph 5 of the escrow agreement, "the work contemplated by the Repair Contract shall be completed by August 15, 2010. Any balance remaining in the Repair Fund on or after September 1, 2010 shall be disbursed to Merrill Lynch and applied by Merrill Lynch to the principal balance of the Note." Id., ¶5.

On September 1, 2010, the entire balance of the repair fund remained in escrow and Merrill Lynch applied the $300,000 to Allen's outstanding mortgage balance. Amended Complaint, ¶8. PHH issued a mortgage payoff statement to Allen on September 14, 2010, in the amount of $278,881.18, if paid by September 30, 2010. Amended Complaint ¶9; Complaint, Ex. 14. By that time, Allen had not made a monthly mortgage payment in four years, and the Amended Complaint does not allege that he had made such payments. Def. Mem., p. 9; Amended Complaint.

Allen's Amended Complaint alleged that the payoff statement he received from PHH constituted harassment and discrimination pursuant to Minn. Stat. §363A.17, subd. 3, the Discrimination in Business provision of the Minnesota Human Rights Act. Amended Complaint, ¶108. Allen also alleged defendants committed fraud in violation of Minn. Stat. § 325F.69 Subd. 1, the Minnesota Consumer Fraud Act. Amended Complaint, ¶112.

4

At the hearing on defendants' motion to dismiss Allen's Amended Complaint on March 16, 2011, Allen indicated that he wanted to withdraw the claims asserted in the Amended Complaint and amend his complaint to bring claims of common law fraud, harassment, emotional distress and violation of his civil rights under unidentified federal statutes.  Order, May 9, 2011, p. 6 [Docket No. 58].  The Court allowed Allen to move for leave to serve and file a second amended complaint based on these representations.  Id.  The Court held defendants' motion to dismiss in abeyance pending Allen's motion for leave to amend his complaint, and indicated that defendants could renew their arguments in favor of dismissal, including arguing that the proposed amendments were futile or failed to meet Rule 11 standards.[3]  Id., pp. 6-7.

Allen filed a motion to amend the complaint.  [Docket No. 53].  In his proposed Second Amended Complaint ("SAC"), Allen alleged three causes of action against all of the defendants: (1) common law fraud; (2) intentional infliction of emotional distress and; (3) harassment.  SAC, ¶¶34-83 [Docket No. 56-1].  Allen's common law fraud claim is based on five specific acts allegedly committed by the defendants:

(1)     Rather than apply the proceeds of the repair fund to future mortgage payments, defendants fraudulently "called in [Allen's] mortgage" and issued a payoff statement.  SAC, ¶36.

(2)     Despite Merrill Lynch's representations that its intervention in Allen's lawsuit against his builder would not "delay or prejudice the adjudication of the rights of

---

[3]     Defendants moved to dismiss the Amended Complaint on various grounds, including lack of proper service on all but one defendant.  Def. Mem. to Dismiss, p. 25. At the motion hearing on March 16, 2011, defendants withdrew that objection.

the existing parties," defendants "FRAUDULENTLY began to delay and prejudice the adjudication of me as a party in the litigation."  SAC, ¶37.

(3)     Defendants fraudulently stated in a letter dated October 22, 2008 to Allen that he was unwilling to reinstate the 2007 loan modification agreement.  SAC, ¶38; Ex. 169.  According to Allen, the 2007 loan modification agreement required him to pay $0.00 per month, while the 2008 modification proposal required him to pay $4,418.21 per month for the first 20 months and $2,945.47 per month for the second twenty months.[4]

(4)     Defendants fraudulently refused to approve a short sale of Allen's home, "while at the same time they were accepting offers that were less than the mortgage balance for comparable healthy homes that were free of mold and other harmful contaminants."  SAC, ¶39.

(5)     Defendants ignored Allen's "pleas for help" and "fraudulently systematically changed the contacts assigned to respond to [his] case."  SAC, ¶40.

Allen alleged that he was induced to act in reliance on the defendants' fraudulent acts and statements.  The acts Allen claimed he undertook in reliance on defendants' fraudulent actions were that he was induced to act in reliance on the defendants' fraudulent issuance of a payoff statement by attempting to communicate the defendants and their counsel (SAC, ¶56); he was induced to act "by not acting" in response to defendants' "attempts to persuade [him] that their actions were fair … and by accepting

---

[4]     The 2007 loan modification agreement, attached as Exhibit C to the Macdonald affidavit [Docket No. 13-1], stated that the monthly mortgage payment would be $2945.47.    Merrill Lynch's 2008 proposal, contained in a letter from D. Charles Macdonald to Horace Allen, was that Allen would pay $4418.21 per month to catch up on the payments Allen had missed under the 2007 modification.  When those missing payments taken care of, the monthly payment would revert to $2945.47.

the ignoring and denial of [his] pleas for help."  SAC, ¶¶58, 60.  <u>See</u> <u>also</u> SAC, ¶57 ("I was induced to act by virtue of not acting based on my reliance on the representation of Bank of America and the associated Defendants that its FRAUDULENT behavior was acceptable in stating that it would not delay or prejudice the adjudication of either party in the intervention of my lawsuit, but then immediately start[ed] applying unscrupulous pressure in the threatening of the foreclosure of my home, after it intervened."); SAC, ¶59 ("Bank of America and the associated Defendants induced me to act based on my reliance on their representations by way of accepting the denial of my home for short sale based on the reliance of the Defendants falsely representing to me that my home was not eligible for short sale and that they (the Defendants) had not approved other homes for short sale.").

Allen alleged that he was damaged by the publication of adverse financial information relating to the foreclosure; the "negative trickle down effects of information that have become part of the public domain (i.e. foreclosures, auction, credit card lawsuits, child support judgment, etc.);" the destruction of his "Personal Brand Equity and Goodwill;" attorneys' fees he spent in connection with his lawsuit against his homebuilder, which he alleges were increased as a result of defendants' intervention; $33,647.33 in child support arrearages, which he claims were occasioned by defendants' fraudulent behavior; and $160,000 in past due credit card payments, which he attributes to defendants' fraudulent conduct in intervening in his lawsuit against his builder.  SAC, ¶¶ 62-66.

As for Allen's claim of intentional infliction of emotional distress, he asserted that defendants' conduct in connection with the foreclosure was extreme and outrageous,

intentional and reckless and resulted in severe emotional distress.   SAC, ¶68. According to Allen, he was threatened with incarceration and the revocation of his driver's license for failure to pay child support; he was unable to market his non-profit organization as a result of the negative financial data regarding him, which is now in the public domain; defendants' conduct caused him to experience a breakdown in his immune system, resulting in shingles; and defendants were responsible for the foreclosure of the new home in which Allen and his family were living, as well as his wife's rental property.[5]  SAC, ¶¶71-75.

Allen alleged a claim for harassment based on the defendants' "excessive collection efforts."  SAC, ¶76.

Defendants opposed Allen's motion for leave to amend on the grounds that the proposed new claims were futile because they failed to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) and Allen failed to plead fraud with the requisite particularity. Defendants' Memorandum in Opposition to Plaintiff's Motion for Leave to Amend Complaint, ("Def. Mem. in Opp.") pp.1-23 [Docket No. 61].   In addition, defendants sought an award of $2,500 in sanctions against Allen for naming Wells Fargo in the original and amended complaint and then refusing to dismiss Wells Fargo after counsel pointed out that Wells Fargo was merely the bank at which the loan servicer PPH Mortgage had its depository accounts.  Id., p. 24.  As a result of Allen's refusal to voluntarily dismiss it, Wells Fargo maintained that it was forced to incur fees and costs in drafting, filing and arguing its motion to dismiss.  Id.

---

[5]     There is no further information about these two properties in the SAC, and there is no allegation that any of the defendants had an interest in these properties.

II.     **STANDARD OF REVIEW**

    A.     <u>**Motion For Leave to Amend Complaint**</u>

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given when justice so requires."   The court has the discretion to determine whether to grant leave to amend.  <u>See</u> <u>e.g.,</u> <u>Niagara of Wis. Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund</u>, 800 F.2d 742, 749 (8th Cir. 1986) (citation omitted).  This liberal standard is not absolute.  <u>Thompson-El v. Jones</u>, 876 F.2d 66, 67 (8th Cir. 1989). Leave to amend may be denied if the court finds "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." <u>See</u> <u>Sanders v. Clemco Indus.</u>, 823 F.2d 214, 216 (8th Cir. 1987) (citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)).

Where defendants have alleged that new claims are futile, the Court must decide whether the amendments state a claim for relief.  <u>See</u> <u>Stutz v. Nelson</u>, 601 F.3d 842, 850-51 (8th Cir. 2010) ("[d]enial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Accordingly, in reviewing a denial of leave to amend we ask whether the proposed amended complaint states a cause of action under the <u>Twombly</u> pleading standard…") (citation and marks omitted)); <u>In re Senior Cottages of Am., LLC</u>, 482 F.3d 997, 1001 (8th Cir. 2007) (denying a motion to amend on the basis of futility "means that the court reached a legal conclusion that the amended complaint could not withstand a <u>Rule 12</u> motion."); <u>United States ex. rel. Gaudineer & Comito, L.L.P. v. Iowa</u>, 269 F.3d 932, 936 (8th Cir. 2001) ("The denial of leave to amend based on futility means that the

court found that the amended complaint failed to state a claim… ."), <u>cert.</u> <u>denied</u> 536 U.S. 925 (2002).

    **B.**    <u>**Motion to Dismiss**</u>

       Allen has moved to withdraw his amended complaint and substitute it with the SAC.  Plaintiff's Affidavit in Support of Motion to Amend Complaint, ¶2 ("Pl. Aff. in Support") ("I request that the honorable court fully replace my original and all other complaints that have been filed in this matter with my Amended Complaint.") [Docket No. 56].  To the extent that defendants' opposition to Allen's motion for leave to amend also reflects defendants' renewed motion to dismiss with prejudice all of Allen's claims against all of the defendants, the court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Braden v. Wal-Mart Stores, Inc.</u>, 588 F.3d 585, 594 (8th Cir. 2009) (internal quotation omitted).  "A claim has facial plausibility when the plaintiff [has pled] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).  "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action" are insufficient to state a claim.  <u>Id.</u>

       The Court will liberally construe the pleadings of an unrepresented party.  <u>Stone v. Harry</u>, 364 F.3d 912, 914 (8th Cir. 2004).  Pro se complaints, "however inartfully pleaded" are held to "less stringent standards than formal pleadings drafted by lawyers." <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  " '[I]f the court can reasonably read the pleadings to state a valid claim on which the [plaintiff] could prevail, it should do so despite the [plaintiff's] failure to cite proper legal authority, his confusion of various legal

theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.'" Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999) (quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)). The court's liberal construction does not extend to allowing defective and insufficiently pled claims to proceed. Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). ("[A]lthough it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions."); Kaylor v. Fields, 661 F.2d 1177, 1183 (8th Cir. 1981) ("[P]leadings * * *brought pro se [ ] are to be liberally construed. * * *But a well-pleaded complaint must contain something more than mere conclusory statements that are unsupported by specific facts." (citations omitted)). Neither may the courts, in granting the deference owed to pro se parties, "assume the role of advocate for the pro se litigant." Barnett, 174 F.3d 1133.

In deciding a motion to dismiss, a court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999); Fed. R. Civ. P. 10 (c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Allen attached thirty-nine exhibits to his SAC. The Court has read and considered all of these exhibits in deciding this motion.

## III.   DISCUSSION

### A.   Claims of Fraudulent Misrepresentation

To succeed on a fraudulent misrepresentation claim under Minnesota law, a plaintiff must prove the following:

> (1) there was a false representation by a party of a past or existing material fact susceptible of knowledge; (2) made with knowledge of the falsity of the representation or made as of the party's own knowledge without knowing whether it

> was true or false; (3) with the intention to induce another to act in reliance thereon; (4) that the representation caused the other party to act in reliance thereon; and (5) that the party suffer[ed] pecuniary damage as a result of the reliance.

Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010) (citing Hoyt Props., Inc. v. Production Res. Group, L.L.C., 736 N.W.2d 313, 318 (Minn. 2007)).  Additionally, Fed. R. Civ. P. 9(b) requires that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Regarding the particularity requirement, the Eighth Circuit has explained:

> Circumstances include such matters as time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.  Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, conclusory allegations that a defendant's conduct was fraudulent and deceptive are not enough to satisfy the rule.

Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc., 61 F.3d 639, 644 (8th Cir. 1995). "Put another way, the complaint must identify the who, what, where, when and how of the alleged fraud."  United States ex. rel. Joshi v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (quotation omitted).  While on the one hand, "Rule 9(b) does not require that a 'complaint be suffused with every minute detail of a misrepresentation'" (McGregor v. Uponor, Inc., Civ. No. 09-1136 (ADM/JJK), 2010 WL 55985 at *4 (D. Minn. Jan. 4, 2010) (quoting Carlson v. A.L.S. Enters., Inc., Civ. No. 07-3970, 2008 WL 185710 at *3 (D. Minn. Jan. 18, 2008)), at the same time, the complaint must include enough detail to state the "core of [a plaintiff's claims] and the factual grounds on which the claims were based."  Quality Inns, 61 F.3d at 646.

12

This Court finds that Allen's fraud claims fail as a matter of law because none of the five acts Allen described in the SAC involve false representations, much less allege facts to support any of the other four elements required to assert a claim of fraudulent misrepresentation.

As to the first fraudulent act, Allen has not alleged any statements to him by defendants, much less any statements by any defendant that were not true or any acts of reliance by Allen on any alleged statements.  The fact is that defendants were free to apply any balance remaining in escrow after September 1, 2010 to the principal balance of Allen's mortgage note pursuant to the escrow agreement.  Further, when PHH issued the mortgage payoff statement on September 14, 2010, Allen had not made any mortgage payments in four years, and there is no allegation that he did not owe the amount stated in the payoff statement.  Neither application of the escrowed proceeds from the settlement of Allen's suit against his home builder, nor issuance of a mortgage payoff statement amounts to fraudulent misrepresentation as a matter of law.

As to the second fraudulent act, the SAC states in a conclusory fashion and without any factual support, that defendants' "comprehensive and systematic fraudulent behavior…transformed a simple 6 to 12 month mold infestation litigation into a 39 month lawsuit …."  SAC, ¶65.  Not only has Allen pled no facts to support his allegation that defendants fraudulently delayed his litigation with his homebuilder, but as defendants point out, any statements by defendants that their intervention in the builder's litigation "will not delay or prejudice" the rights of other parties, related to a future event.  Def. Mem., p. 14.  When allegations relate to a future event, there must be proof "that the party making the representation had no intention of performing when the promise was

made." <u>Martens v. Minnesota Mining & Mfg. Co.</u>, 616 N.W.2d 732, 747 (Minn. 2000).
<u>See</u> <u>also</u> <u>Vandeputte v. Soderholm</u>, 298 Minn. 505, 508, 216 N.W.2d 144, 147 (1974)
("It is a well-settled rule that a representation or expectation as to future acts is not a
sufficient basis to support an action for fraud merely because the represented act or
event did not take place.")  Allen has alleged no facts to support any claim that Merrill
Lynch had no intention of fulfilling its representations regarding its intervention in the
lawsuit against Allen's homebuilder.

The third fraudulent act, Macdonald's October 22, 2008 letter to Allen stating
Merrill Lynch's understanding that Allen was unwilling to reinstate the 2007 loan
modification, similarly fails to state a claim for fraud.  Allen insists that the fraud stems
from the fact that the 2008 proposed loan modification had nothing to do with the 2007
loan modification into which he entered.  SAC, ¶38.  Yet Macdonald's 2008 proposal
clearly references the payment amount established by the 2007 loan modification.
SAC, Ex. 165 (October 13, 2008 letter from Macdonald to Allen stating that if Allen
accepted Merrill Lynch's proposal and made up missing payments, the monthly amount
would "revert" to the amount established by the 2007 loan modification.).  Additionally,
on its face, the October 22, 2008 letter contains no false representations.  It merely
states Merrill Lynch's understanding regarding Allen's unwillingness to accept its
proposal of October 13, 2008.  The letter even invites Allen to make a counterproposal.
("Absent any reasonable counterproposal, Merrill Lynch will protect its interest in the
mortgaged property.").  Furthermore, while Allen claims that he was induced to act in
reliance on the October 22, 2008 letter (SAC, ¶58), he put forward no facts to suggest
that he relied on it.  Indeed, Macdonald's letter did not induce Allen to do anything –

Allen never made any payments under the 2007 modification agreement or any other payments.

The fourth fraudulent act, that defendants refused to engage in a short sale of Allen's home for $1.00, also fails to state a claim of fraudulent misrepresentation. Setting aside the fact that a lender's refusal to engage in a short sale of real property in which it has an interest does not, standing alone, give rise to a cause of action for fraud, even if it were true that defendants were approving short sales of other homes not plagued by mold infestation, that fact does not give rise to a claim of fraud.  Allen has not indicated what it was about the defendants' decision not to sell him his home for $1.00 that was fraudulent, or pled facts to show that he took any action based on that decision.  In short, the forth allegation of fraud fails to state a claim on which relief may be granted.

Likewise, the fifth fraudulent act, that Bank of America committed fraud by changing the client representatives responding to Allen's requests for information, is futile.  Bank of America's failure to provide Allen with a single point of contact on the important issues relating to Allen's mortgage and foreclosure proceedings may be poor business practice, but it does not amount to fraud.  Moreover, Allen has not alleged any acts of reliance on Bank of America's ever-changing representatives.   Lacking allegations of facts to support such the fifth fraudulent action, it too cannot proceed.

In sum, this Court concludes that none of Allen's fraud claims can survive a motion to dismiss under Rule 12(b)(6), and are, therefore, futile.  See Stutz, 601 F.3d at 850-51.

**B.**     **Claims of Intentional Infliction of Emotional Distress**

A claim for intentional infliction of emotional distress requires a plaintiff to prove the following: (1) the conduct must be extreme and outrageous; (2) it must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. Langeslag v. KYMN, Inc., 664 N.W.2d 860, 864 (Minn. 2003).  The type of conduct subject to a claim for intentional infliction of emotional distress "must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community[;] … [a] complainant must sustain a similarly heavy burden of production in allegations regarding the severity of his mental distress; … [t]he law intervenes only where the distress inflicted is so severe that no reasonable [person] could be expected to endure it."  Hubbard v. United Press Int'l., Inc., 330 N.W.2d 428, 439-40 (Minn. 1983) (internal quotations and citations omitted).  The Minnesota Supreme Court has "cautioned that intentional infliction of emotional distress is 'sharply limited to cases involving particularly egregious facts[.]'"  Langeslag, 664 N.W.2d at 865 (quoting Hubbard, 330 N.W.2d at 439)).

Defendants argued that Allen has failed to sufficiently plead a cause of action for intentional infliction of emotional distress.  Def. Mem. in Opp., p. 18-19.  Additionally, defendants submitted that as all but one of the acts on which Allen based his claim took place more than two years ago, any claim of intentional infliction of emotional distress based on those earlier acts was barred by the applicable statute of limitations.  Id., p. 19 (citing Wenigar v. Johnson, 712 N.W.2d 190, 209 (Minn. Ct. App. 2006)) (two-year statute of limitations governs claims for intentional infliction of emotional distress).

The only act within the two-year statute of limitations that Allen has alleged as triggering a claim for intentional infliction of emotional distress is the issuance of the mortgage payoff statement in September, 2010.

This Court finds that neither the issuance of the payoff statement in September 2010, nor the conduct of the defendants as a whole rises to the level required for a claim for intentional infliction of emotional distress under Minnesota law.  Cf. Robinson v. BAC Home Loan Servicing, L.P., Civ. No. H-10-5168, 2011 WL 2490601 at *6 (S.D. Tex. June 21, 2011) (a letter from a law firm regarding foreclosure of plaintiff's mortgage and subsequent foreclosure proceedings do not rise to the level of the "extreme and outrageous" conduct required under Texas law to state a claim for reckless and intentional infliction of emotional distress); Bryant v. Washington Mut. Bank, 524 F. Supp. 2d 753, 761 (W.D. Va. 2007) ("Although having one's home foreclosed upon is undoubtedly stressful and emotionally taxing, Plaintiff has failed to sufficiently allege facts to allow me to infer that all elements of an intentional infliction of emotional distress claim exist."); Whittle v. Miles Homes, Inc., 995 F.2d 222, 1993 WL 209969 at *3 (5th Cir. 1993) ("The only conduct of [defendant] the [plaintiffs] identified as a basis for [a claim of intentional infliction of emotional distress] consisted of the mailing of notices of foreclosure. … The sending of such a notice is, as a matter of law, not sufficient in itself to create liability for intentional infliction of emotional distress."); Morris v. HomeEq Servicing Corp., No. 288631, 2010 WL 527745 at * 5 (Mich. Ct. App. 2010) (pet. for review denied 783 N.W.2d 367, 367 (Mich. 2010) ("Because plaintiffs failed to present any evidence demonstrating that defendant improperly billed them for their mortgage payment and that they were not in default at the time of foreclosure, summary

disposition of [their] claim [of intentional infliction of emotional distress] was appropriate.").  Applying the standard of a motion to dismiss, it is clear that the issuance of an accurate payoff statement does not create a cause of action for intentional infliction of emotional distress.

Furthermore, the emotional distress Allen has alleged he suffered as a result of defendants' actions cannot support a claim for intentional infliction of emotional distress. Accepting the facts as alleged in the SAC as true, it is clear that the past few years have been challenging and upsetting for Allen and his family.  Allen has experienced a precipitous drop in income, has been the subject of a child support enforcement action for arrearages, and has had difficulty marketing his non-profit organization.  SAC, ¶¶70-74.  In addition, he has experienced shingles, sleeplessness, migraine headaches and a "constant feeling of tension."  Id., ¶74.

However, allegations of similar symptoms do not state a claim of intentional infliction of emotional distress.  See Besett v. Wadena County, Civ. No. 10-934 (JRT/LIB), 2010 WL 5439720 at * 17 (D. Minn. Dec. 7, 2010) (gathering cases rejecting depression, impaired ability to trust, damaged relationships with children, vomiting, skin rashes, stomach disorders, high blood pressure, crying spells, humiliation, embarrassment, insomnia, difficulty sleeping, anxiety, lightheadedness, and shortness of breath as sufficient to support a claim for intentional infliction of emotional distress). The Court finds that the symptoms Allen reports are of the type repeatedly rejected by courts as supporting a claim for intentional infliction of emotional distress.  Id.

For all of these reasons, this Court finds that Allen's proposed cause of action of intentional infliction of emotional distress does not state a claim under the law, and therefore, it is futile.

### C. **Harassment**

Allen alleged a claim for harassment based on defendants' "excessive collection efforts." SAC, ¶76. Minnesota does not recognize an independent, common-law cause of action sounding in tort for "harassment." Therefore Allen's claim for harassment fails as a matter of law and is futile.

## IV. CONCLUSION

Allen's suit should be dismissed and with prejudice. First, Allen has already conceded that the causes of action he alleged in his Amended Complaint are not viable, and therefore, they should be dismissed with prejudice . Pl. Aff. in Support, ¶4 ("I would like to "Add" the stated claims of Common Law Fraud, Intentional Infliction of Emotional Distress and Harassment and "Remove" the stated claims of Fraud (325F.69) and Discrimination (363A.17) because they incorrectly stated claims for the Irresponsible and Illegal behavior perpetrated by the Defendants."). Further, this Court has determined that the proposed new claims are futile because none state a claim on which relief can be granted. As nothing remains to Allen's suit against defendants, this Court concludes it must be dismissed with prejudice.

Allen clearly feels wronged by defendants. Notwithstanding all of the effort he has devoted to persuading the Court that Bank of America or the other defendants are bad actors, the fact of the matter is that a lawsuit based on claims that they are poor corporate citizens cannot be sustained. See e.g. SAC, ¶35 (describing defendants'

"history of fraud" by reproducing "media headlines" regarding Bank of America and PHH Mortgage); ¶SAC, Ex. 57 (reprints of articles regarding Bank of America's involvement in subprime mortgages and employment layoffs at Merrill Lynch occasioned by Merrill Lynch's massive write-offs). "[T]he law is a tool of limited capacity. Not every wrong, even the worst, is cognizable as a legal claim." Alperin v. Vatican Bank, 410 F.3d 532, 562 (9th Cir. 2005) (quotation omitted).

The Court is similarly sympathetic to Wells Fargo's frustration that it was named as a defendant in Allen's Amended Complaint, and that Allen refused to dismiss it even after being informed that Wells Fargo merely maintained the depository account for PHH. SAC, Ex. 52 (email from D. Charles Macdonald to Allen dated September 30, 2010). Nonetheless, the Court will not sanction Allen for naming Wells Fargo in the Amended Complaint. Allen has admitted that Wells Fargo was not a proper defendant, and did not include Wells Fargo in the SAC.

For all of the foregoing reasons,

**IT IS RECOMMENDED THAT:**

Defendants' Motion to Dismiss [Docket No. 3] be GRANTED, plaintiff's Motion for Leave to Amend [Docket No. 53] be denied, and plaintiff's suit should be dismissed with prejudice.

Dated: July 22, 2011                                 *Janie S. Mayeron*
                                                      JANIE S. MAYERON
                                                      United States Magistrate Judge

## **NOTICE**

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **August 5, 2011,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.   A party may respond to the objecting party's brief within fourteen days after service thereof.   All briefs filed under this Rule shall be limited to 3500 words.   A judge shall make a de novo determination of those portions to which objection is made.   This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.   Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **August 5, 2011.**